USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/22/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ZHEN LIN,

                Petitioner,

-against-

JUDITH ALMODOVAR, *in her official capacity as Field Office Director of Enforcement and Removal Operations, New York City, Immigration and Customs Enforcement;* KRISTI NOEM, *in her official capacity as Secretary of the U.S. Department of Homeland Security;* PAMELA BONDI, *in her official capacity as Attorney General of the United States;* EXECUTIVE OFFICE FOR IMMIGRATION REVIEW,

                Respondents.

1:25-cv-9639-MKV

OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

---

MARY KAY VYSKOCIL, United States District Judge:

    This case concerns the present detention of Petitioner Zhen Lin, a Chinese national, who has been in immigration detention since November 18, 2025. Petitioner unlawfully entered the United States in November 2024 and was placed in expedited removal proceedings. When he claimed to fear returning to China, Petitioner was referred to an asylum officer for a credible fear interview. His fear was found credible, and as a result he was referred to an immigration judge to pursue an asylum application during his removal proceedings.

    Thereafter, on December 16, 2024, the Department of Homeland Security ("DHS") granted Petitioner conditional parole to enter the United States under 8 U.S.C. § 1182(d)(5)(A) and informed him that his parole was valid for one year, after which it would terminate automatically. DHS further informed Petitioner that his parole could be terminated, on notice, at any time and for any reason prior to the automatic termination date. On November 18, 2025, without providing

1

prior notice that his parole was revoked, Immigration and Customs Enforcement ("ICE") arrested Petitioner.

On November 19, 2025, Petitioner, proceeding through counsel, filed a petition for habeas corpus under 28 U.S.C. § 2241 (the "Petition"). [ECF No. 1]. The Court subsequently issued an Order to Show Cause directing Respondents to show cause by December 1, 2025, why the Petition should not be granted. [ECF No. 4]. Petitioner and Respondents sought an extension of time to submit briefing [ECF No. 7], which the Court granted [ECF No. 8]. Thereafter, Respondents (the "Government") filed an opposition brief (the "Opposition" or "Opp.") [ECF No. 10], accompanied by a return [ECF No. 9] (the "Return"), and the declaration of ICE Acting Supervisory Detention and Deportation Officer Mincheol So ("So Decl.") [ECF No. 11]. Petitioner filed a reply ("Reply"). [ECF No. 12].

The parties agree that Petitioner is subject to mandatory detention during his removal proceedings pursuant to 8 U.S.C. § 1225(b)(1)(B)(ii). Further, Petitioner's parole has now been revoked on written notice, and the date of automatic termination has passed. Accordingly, and for the reasons discussed more fully below, the Petition is denied.

**BACKGROUND**

The facts in this case are not in dispute. On November 12, 2024, Customs and Border Patrol ("CBP") encountered Petitioner, a Chinese national, near Otay Mesa, California and determined that he had unlawfully entered the United States on the same date. So Decl. at ¶ 4. Petitioner was arrested and transported to a nearby Border Patrol Facility where he was processed for expedited removal. *Id.* During processing, Petitioner expressed a fear of return to China and was referred to an asylum officer for a credible fear determination. *Id.* at ¶ 5. On December 13, 2024, an asylum officer interviewed Petitioner and determined that he had a positive credible fear,

and his asylum case was referred to an Immigration Judge. *Id.* at ¶ 6. That same day, the Department of Homeland Security served Petitioner with a Notice to Appear charging him as "an alien present in the United States who has not been admitted or paroled." [ECF No. 9-2, Notice to Appear ("NTA")]. Specifically, the NTA charged Petitioner as inadmissible pursuant to 8 U.S.C. § 1182(a)(7)(A)(i)(I), due to inadequate entry documents at the time of application for admission, as well as under 8 U.S.C. § 1182(a)(6)(A)(i), as an alien present in the United States without being admitted or paroled, or who arrived in the United State at a time or place other than as designated by the Attorney General. *Id.*

Nonetheless, on December 16, 2024, ICE served Petitioner with an Interim Notice Authorizing Parole under 8 U.S.C. § 1182(d)(5)(A). [ECF No. 9-3, Interim Notice Authorizing Parole ("Interim Notice"); *see also* So Decl. ¶ 8]. The Interim Notice provided that Petitioner's parole authorization was valid for one year and "will automatically terminate . . . at the end of the one-year period unless ICE provides [Petitioner] with an extension at its discretion." Interim Notice at 1. It further provided that "ICE may also terminate parole on notice prior to the automatic termination date" and that "[p]arole is entirely within the discretion of ICE and can be terminated at any time and for any reason." *Id.* The Interim Notice clarified that Petitioner's parole "is not valid for work authorization and is not an admission in lawful status." *Id.* The Interim Notice also conditioned Petitioner's parole on his complying with certain terms and conditions. *Id.*

On December 17, 2024, DHS commenced removal proceedings against Petitioner. So Decl. ¶ 9. That same day, Petitioner was released from custody pursuant to the grant of parole under 8 U.S.C. § 1182(d)(5)(A). *Id.* at ¶ 10. Thereafter, Petitioner filed a Change of Venue request to change venue for his immigration proceedings from Houston, Texas to 26 Federal Plaza, New York, New York, and, in turn, filed an application for relief from removal with the Immigration

3

Court at 26 Federal Plaza. *Id.* at ¶¶ 11-12. The Immigration Court granted the change of venue request and set a hearing date for May 1, 2026 at 26 Federal Plaza for Petitioner's pending Application for Asylum and Withholding of Removal. *Id.* at ¶ 13.

On November 18, 2025, ICE encountered Petitioner while conducting operations to locate a different individual, arrested Petitioner pursuant to a signed administrative warrant (Form I-200), and detained him under 8 U.S.C. § 1225(b)(1)(B)(ii). *Id.* at ¶¶ 14, 17; *see also* ECF No. 9-5 ("Form I-200 Warrant").[1] After his arrest, Petitioner was transported to 26 Federal Plaza for processing. So Decl. ¶ 14. The following day, Petitioner filed his habeas Petition. [ECF No. 1]. On December 2, 2025, ICE issued a notice to Petitioner informing him that his parole pursuant to 8 U.S.C. § 1182(d)(5)(A) was revoked and that his previous parole was rescinded. [ECF No. 9-6 ("Revocation Notice")]. The Revocation Notice informed Petitioner that "[a]fter a thorough review of all the factors in this case it has been determined that [Petitioner's] parole from ICE custody is revoked." *Id.* Further, there is no dispute that Petitioner's parole automatically terminated as of December 16, 2025. *See* Interim Notice.

## DISCUSSION

**I.  Relevant Statutory and Regulatory Background Governing Petitioner's Detention**

In order to assess the merits of the Petition, the Court first addresses the relevant statutory framework governing Petitioner's detention. If an immigration officer determines that an arriving alien is inadmissible under 8 U.S.C. § 1182(a)(6)(C) or (a)(7), "the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum . . . or a fear of persecution." 8 U.S.C. § 1225(b)(1)(A)(i). This

---

[1] The Government does not allege that Petitioner was taken into custody given any alleged violation of the conditions of his parole. Rather, he was arrested, during operations targeting another individual, upon a determination of "probable cause to believe that [Petitioner] is removable" based on, among other things, "statements made voluntarily by the subject to an immigration officer and/or other reliable evidence . . . ." Form I-200 Warrant at 1.

4

process is often referred to as "expedited removal." *See* So Decl. at ¶ 4. Here, Petitioner was subject to expedited removal because it was determined that he was inadmissible pursuant to Section 1182(a)(7)(A)(i)(I), which renders inadmissible an alien who lacks a valid visa or entry document at the time of application for admission. *See* 8 U.S.C. 1182(a)(7)(A)(i)(I); *see also* NTA (charging Petitioner as inadmissible under 8 U.S.C. 1182(a)(7)(A)(i)(I)). However, since Petitioner expressed a fear of persecution should he be returned to China, he was referred for an asylum interview. *See* 8 U.S.C. § 1225(b)(1)(A)(ii) (mandating that if an immigration officer determines that an alien "is inadmissible under section 1182(a)(6)(C) or 1182(a)(7) of this title and the alien indicates either an intention to apply for asylum . . . or a fear of persecution, the officer shall refer the alien for an interview by an asylum officer under subparagraph (B)"—*i.e.*, 8 U.S.C. § 1225(b)(1)(B)).

Pertinent here, pursuant to 8 U.S.C. § 1225(b)(1)(B)(ii), if an asylum officer determines after an interview that the alien has a credible fear of persecution, "the alien shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii); *see also Jennings v. Rodriguez*, 583 U.S. 281, 287-88 (2018) (explaining the same). Thus, Section 1225(b)(1)(B)(ii) makes clear that, as is the case here, an alien is subject to mandatory detention "until immigration officers have finished consider[ing] the application for asylum. *See Jennings*, 583 U.S. at 299 (citation omitted). However, DHS, in its discretion, may parole into the United States any alien applying for admission to the United States "on a case-by-case basis for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A). Parole in such a case "shall not be regarded as an admission of the alien[.]" 8 U.S.C. § 1182(d)(5)(A); *see also Jennings*, 583 U.S. at 288 (explaining the same). By statute, parole can be revoked when "in the opinion of the Secretary of Homeland Security," its purpose has been served, and "the alien shall

5

forthwith return or be returned to the custody from which he was paroled." 8 U.S.C. § 1182(d)(5)(A). Pertinent here, Section 1182(d)(5)(A)'s **implementing regulations** require that "***parole shall be terminated upon written notice to the alien***." 8 C.F.R. 212.5(e)(2)(i) (emphasis added).

When he initially filed his Petition, Petitioner confused the statutory scheme governing his detention. He did not challenge the revocation of his parole, rather he originally argued that he was not subject to mandatory detention under 8 U.S.C. § 1225(b)(*2*)(A) and, instead, should be afforded a bond hearing under 8 U.S.C. § 1226(a). Pet. at ¶¶ 3-7. However, as the Government points out, Opp'n at 5-6, and as Petitioner now concedes in his Reply, Reply at 2, neither of those provisions is applicable and Petitioner clearly is not entitled to a bond hearing. Rather, as he concedes, Petitioner plainly is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(1)(B)(ii) pending "further consideration of the application for asylum," subject only to DHS's discretion to parole him under 8 U.S.C. § 1182(d)(5)(A). *See* Reply at 2 ("Petitioner concedes that he falls within the scope of 8 U.S.C. § 1225(b)(1)(B)(ii) and is thus not statutorily entitled to a bond hearing under 8 U.S.C. § 1226(a).").

## II. The Process Due

In acknowledging he is subject to mandatory detention, Petitioner shifts tack in his Reply and for the first time challenges the process by which his parole was revoked. Specifically, having received notice of his parole revocation a week before filing his Reply, he argues that his detention violates his Fifth Amendment procedural due process rights because ICE arrested him without notice or process and only terminated his parole after the fact. *See* Reply at 2-3, 5-6.

As an initial matter, the process due to Petitioner with respect to the revocation of his parole turns on Petitioner's status as an applicant for admission. While the Second Circuit has

6

acknowledged that aliens "are entitled to due process[,]" *Zheng v. Mukasey*, 552 F.2d 277, 286 (2d Cir. 2009) (citation omitted), the Supreme Court has made clear that "an alien on the threshold of initial entry stands on a different footing: Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned." *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953). Indeed, under the so-called "entry fiction," an applicant for admission, including one who has been paroled, is "'treated' for due process purposes 'as if stopped at the border.'" *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020) (quoting *Mezei*, 345 U.S. at 215); *see also Cruz-Miguel v. Holder*, 650 F.3d 189, 197 n.12 (2d Cir. 2011) ("Although aliens paroled under 8 U.S.C. § 1182(d)(5)(A) physically enter the United States temporarily, they are nevertheless deemed to remain constructively detained at the border."); *Poonjani v. Shanahan*, 319 F. Supp. 3d 644, 648 (S.D.N.Y. 2018) (noting that under the "entry fiction," "aliens who have been denied admission to the United States yet are present within its borders are treated, for constitutional purposes, as if stopped at the border") (citation omitted). Thus, the process due to Petitioner is that procedure authorized by Congress. *See Poonjani*, 319 F. Supp. 3d at 648-49 (finding parolee, who was subsequently detained under Section 1225(b)(1)(B)(ii), had remained "at the threshold of initial entry for immigration purposes" and was entitled only to that process detailed in the relevant immigration statutes).

Thus, in ascertaining the process due to Petitioner in connection with his parole revocation, the Court must determine what process Congress has prescribed. The relevant statute is Section 1182(d)(5)(A). That statute, however, does not prescribe a process for revoking parole. *See* 8 U.S.C. § 1182(d)(5)(A). As indicated above, the statute leaves the revocation of parole to the discretion of the Secretary of Homeland Security. *See id*. The implementing regulations, however,

require that "parole shall be terminated upon written notice to the alien[.]" 8 C.F.R. § 212.5(e)(2)(i).

The Second Circuit has made clear that "under deeply rooted principles of administrative law, not to mention common sense, government agencies are generally required to follow their own regulations." *Fed. Defs. of New York, Inc. v. Fed. Bureau of Prisons*, 954 F.3d 118, 130 (2d Cir. 2020). In the immigration context specifically, the Second Circuit has held that an applicant for asylum was entitled to "procedural rights protected by statute and INS regulations[.]" *Augustin v. Sava,* 735 F.2d 32, 38 (2d Cir. 1984).[2] However, the Second Circuit has held that not every technical violation of a regulation necessitates invalidating agency action. *See Waldron v. I.N.S.*, 17 F.3d 511, 518 (2d Cir. 1993). In *Waldron*, the Second Circuit explained that, where a regulation "is promulgated to protect a fundamental right derived from the Constitution or a federal statute, and the INS fails to adhere to it, the challenged deportation proceeding is invalid and a remand to the agency is required." *Id*. However, where the violated regulation "does not affect fundamental rights derived from the Constitution or a federal statute," the alien must show that he was prejudiced by the violation. *Id*. Here, the Court assumes without deciding that the notice requirement embodied in 8 C.F.R. § 212.5(e)(2)(i) is an element of the process due to Petitioner.[3]

As explained above, Petitioner was not provided advance notice of his parole revocation prior to his arrest on November 18, 2025. *See* Revocation Notice (notifying Petitioner of his parole

---

[2] The court in *Savane v. Francis*, __ F. Supp. 3d. __, 2025 WL 2774452, at *8 (S.D.N.Y. Sept. 28, 2025), implicitly assumed that 8 C.F.R. 212.5(e)(2)(1)'s written notice requirement is part of "the statutorily required process for revoking" parole.

[3] Some courts have additionally ruled that based on "'common sense and the words of the statute'" the written notice revoking paroles "'requires a case-by-case assessment to comply with the statute' and 'must attend to the reasons an individual [noncitizen] received parole' initially"—*i.e.*, urgent humanitarian reasons or significant public benefit. *Savane*, 2025 WL 2774452, at *8 (quoting *Mata Velasquez v. Kurzdorfer*, 794 F. Supp. 3d 128, 146 (W.D.N.Y. 2025)); *see also Diallo v. Maldonado*, No. 25-CV-05740 (DG), 2025 WL 3158295, at *5 (E.D.N.Y. Nov. 12, 2025) (the same). However, the Court need not reach this issue because Petitioner's eventual notice of revocation included an individualized assessment. *See* Revocation Notice.

revocation on December 2, 2205). Accordingly, ICE violated Petitioner's due process rights when it arrested him without abiding by "the basic written notice requirement." *Savane*, 2025 WL 2774452, at *10.

However, Petitioner was subsequently provided with written notice of the revocation of his parole on December 2, 2025, which stated that his parole had been revoked based on an individualized assessment. *See* Revocation Notice. In the letter revoking Petitioner's parole, ICE states that based on a "thorough review of all the factors in [Petitioner's] case" his parole is revoked and explained that parole is "generally justified on a case-by-case basis for urgent humanitarian reasons or significant public benefit, provided the alien presents neither a security risk nor a risk of absconding." Revocation Notice.

In all events, Petitioner has been on notice since December 16, 2024, when he was granted conditional parole, that his parole automatically terminated on December 16, 2025. *See* Interim Notice at 1. Furthermore, as noted above, Petitioner had previously been warned, in the Interim Notice, that his parole "is entirely within the discretion of ICE and can be terminated at any time and for any reason." Interim Notice at 1.

As such, this case is different from other cases in which courts have ordered aliens released based on a failure to comply with the implementing regulation requiring that parole be revoked upon written notice. *See Savane*, 2025 WL 2774452, at *8 (assuming Petitioner is an applicant for admission and the entry fiction applies and, in turn, finding the Government "violated Petitioner's due process rights because they did not comply with the statutorily required process for revoking [petitioner's] parole"); *see also Diallo*, 2025 WL 3158295, at *5 (finding Petitioner's due process rights violated where "[t]he record does not reflect that Petitioner received the notice required in connection with revocation of parole under Section 1182(d)(5)(A)"). Unlike in this case, in *Savane*

9

and *Diallo*, the record was devoid of any notice of revocation whatsoever. *See Savane*, 2025 WL 2774452 at *8 & n.14 (noting Government "could not confirm whether they had complied with 8 C.F.R. § 212.5"); *Diallo*, 2025 WL 3158295 at *5; *but see Mata Velasquez*, 794 F. Supp. 3d at 145-46 (noting that while petitioner's due process rights were violated when he was arrested without any notice that his parole was revoked, that fact "did not end the inquiry" because the Petitioner was subsequently provided notice of his parole revocation a week later).[4] As such, in *Savane* and *Diallo*, the courts ordered the Government to release the petitioners. The Government thereafter remained free to "re-detain[] [those petitioners] in a way that follows the rules." *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 156-58 (W.D.N.Y. 2025).

This case is different. Petitioner's parole has now been revoked upon written notice. *See* Revocation Notice. Moreover, since his initial conditional release on parole, Petitioner has been on notice that his parole would terminate automatically on December 16, 2025 if he was not notified earlier of its revocation. Interim Notice at 1. The relevant statutes and regulations, which define Petitioner's procedural due process rights in this case, do not provide for an opportunity to be heard. And finally, Petitioner explicitly concedes he is currently subject to mandatory detention under Section 1225(b)(1)(B)(ii). Reply at 2. Thus, under these specific circumstances, it is not appropriate to grant a writ of habeas corpus, which is "'an extraordinary remedy' that should only be granted 'in the exercise of a sound judicial discretion[,]'" *Dzhabrailov v. Decker*, 20-cv-3118 (PMH), 2020 WL 2731966, at *3 (S.D.N.Y. May 26, 2020) (*quoting Pinkney v. Keane*, 920 F.2d

---

[4] The Court acknowledges that the court in *Mata* ultimately released the petitioner and found the revocation of parole to be procedurally improper because (1) the notice of revocation did not provide a sufficiently individualized explanation and instead offered a summary revocation; and (2) Petitioner was not given an opportunity to be heard before revocation. *Id.* at 153. Here, as discussed, Petitioner has since been given an individualized explanation for his revocation. *See* Revocation Notice. Further, *Mata*'s holding requiring an opportunity to be heard was based on the specific "sui generis" factual circumstances in that case, which are not present here. *Id.* at 147-48 (discussing *U.S. ex rel. Paktorovics v. Murff*, 260 F.2d 610 (2d Cir. 1958)).

1090, 1094 (2d Cir. 1990). Petitioner has received adequate notice of his revocation, and indeed his parole was automatically revoked on December 16, 2025, and all agree that he is currently subject to mandatory detention under Section 1225(b)(1)(B)(ii). Petitioner's requested relief would do nothing to redress his harm. *See Yearwood v. Barr*, 391 F. Supp. 3d 255, 260-62 (S.D.N.Y. 2019) ("[T]he petitioner's complaints about the procedural defects in removing him would not be redressed by bringing him back to the United States subject to being removed again.").[5]  For these reasons, the Petition is denied.

## CONCLUSION

For the foregoing reasons, the Petition is DENIED with prejudice.

The Clerk of Court is respectfully requested to close the case.

**SO ORDERED.**

**Date:  December 22, 2025**
**New York, NY**

**MARY KAY VYSKOCIL**
**United States District Judge**

---

[5] It would be an absurd result indeed to order Petitioner released under these circumstances. To do so would be to treat Petitioner as a pawn in an effectively hollow assertion of judicial supremacy; upon release the Government would be obligated to immediately re-detain Petitioner under Section 1225(b)(1)(B)(ii).